[Civ. No. 60833. Second Dist., Div. Three. Nov. 25, 1981.]

In re STEVEN S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
KAY S., Defendant and Appellant.

COUNSEL

Judith Johnson for Defendant and Appellant.

John H. Larson, County Counsel, and Martin E. Weekes, Deputy County Counsel, for Petitioner and Respondent.

Fred Okrand, Mark D. Rosenbaum, Susan G. McGreivy, Carol Sobel, Terry Smerling and Emma Castro as Amici Curiae.

OPINION

LUI, J.—Appellant Kay S. appeals from a juvenile court order of May 28, 1980, sustaining a dependent child petition filed May 6, 1980,[1] contending that the juvenile court erred in declaring her unborn child a minor within the meaning of Welfare and Institutions Code section 300 and in ordering appellant detained pursuant to said order. For the reasons set forth herein, we hold that an unborn fetus is not a person within the meaning of Welfare and Institutions Code section 300. We, however, dismiss the appeal as moot due to the birth of the child and the fact that there is presently no parent or guardian willing to exercise or capable of exercising care or control of appellant's child.

FACTS

On April 30, 1980, appellant was certified to receive intensive psychiatric treatment for no more than 14 days.[2] Appellant requested judicial review of her mental health commitment and her petition for writ of habeas corpus was set for hearing in department 95, the mental health department, of the Los Angeles County Superior Court.

---

[1]Pursuant to rule 12(a) of the California Rules of Court, we have made the superior court file part of the record of appeal. Further, we take judicial notice of the contents of appellant's Los Angeles Superior Court mental health file No. M251423, pursuant to Evidence Code section 452, subdivision (d).

[2]Appellant was certified for such treatment pursuant to Welfare and Institutions Code section 5250. Hereinafter, all references are to the Welfare and Institutions Code unless otherwise specified.

A dependent child petition was filed on May 6, 1980, in the Juvenile Court of the County of Los Angeles alleging that the appellant's then unborn child was a minor who came within the provisions of section 300, subdivision (a)[3] and further alleging that appellant had an undiagnosed psychiatric illness. At the same time appellant's petition for writ of habeas corpus was pending in department 95, appellant was before the juvenile court for an arraignment and detention hearing on the dependent child petition. A deputy district attorney, whose office is responsible for litigating mental health cases in department 95,[4] informed the juvenile court that his office was unable to proceed because of the doctor's opinion that there was insufficient evidence of the appellant's mental illness under Lanterman-Petris-Short Act (LPS), and accordingly the appellant's pending writ in department 95 was discharged. At the conclusion of the detention hearing the juvenile court ordered the unborn fetus, and accordingly appellant, detained under section 320 pending the adjudication on the merits of the dependent child petition. Appellant was ordered detained at the Los Angeles County—University of Southern California Medical Center (County Medical Center) pending transfer to Women's Hospital. The court specifically ordered the mother released upon birth of the child.[5]

At the adjudication hearing conducted on May 28, 1980, the juvenile court sustained the petition as true and found that the unborn fetus was a minor described by section 300, subdivision (a). The mother's detention was continued on the same basis of the court's previous order of May 6, 1980. Appellant gave birth to the child on June 23, 1980.

---

[3]Section 300, subdivision (a), provides that "[a]ny person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: [¶] (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control. No parent shall be found to be incapable of exercising proper and effective parental care or control solely because of a physical disability, including, but not limited to, a defect in the visual or auditory functions of his or her body, unless the court finds that the disability prevents the parent from exercising such care or control."

[4]In Los Angeles County, the office of the county counsel is responsible for litigating dependent child petitions filed by the department of public social services (DPSS). The district attorney is not ordinarily involved in dependent child proceedings.

[5]The juvenile court was faced with a dilemma at the detention hearing since it was told that the district attorney was not proceeding under LPS, birth of the child was imminent, and the appellant Kay S. would be released almost immediately unless detained pursuant to the petition filed in juvenile court.

## DISCUSSION

### An Unborn Fetus Is Not a Person Within the Meaning of Welfare and Institutions Code Section 300

In *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122], our Supreme Court addressed the issue whether a stillborn fetus is a "person" within the meaning of the wrongful death statute. (Code Civ. Proc., § 377) and stated: "In *People* v. *Belous* (1969) 71 Cal.2d 954, 968 [80 Cal.Rptr. 354, 458 P.2d 194], we observed 'there are major and decisive areas where the embryo and fetus are not treated as equivalent to the born child.' Indeed, such equivalence is the exception rather than the rule. As the United States Supreme Court explained in *Roe* v. *Wade* (1973) *supra*, 410 U.S. 113, 161, 162 [35 L.Ed.2d 147, 182, 93 S.Ct. 705], 'In areas other than criminal abortion, *the law has been reluctant to endorse any theory that life, as we recognize it, begins before live birth or to accord legal rights to the unborn except in narrowly defined situations and except when the rights are contingent upon live birth. . . . In short, the unborn have never been recognized in the law as persons in the whole sense.'* (Fns. omitted.) . . ." (*Id.* at p. 577, italics added.)

"The law of California on these questions is statutory. Recovery is permitted for prenatal injuries by a child who is born alive, solely because the action falls within the terms of Civil Code section 29. That section provides generally that 'A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth; . . .' Among the 'interests' of the child under this statute is the right to compensation for personal injuries inflicted by the intentional or negligent conduct of another. [Citation.] [¶] The property rights of an unborn child are also prescribed in Civil Code section 29, together with a number of special statutes on the subject. . . . [¶] Lastly, *in the limited instances in which the Legislature has extended the protection of the criminal law to the unborn child, it has specially identified the object of its concern.* Thus Penal Code section 270 makes it a misdemeanor for a father to wilfully fail to provide support for a 'minor child.' Such legislation was construed to be inapplicable to a failure to support an unborn child. [Citation.] When the Legislature determined to extend the statute to that situation it did so expressly, by borrowing the language of Civil Code section 29 and incorporating it in the following amendment to Penal Code section 270: 'A child conceived but not yet born is to be

deemed an existing person insofar as this section is concerned.' (Stats. 1925, ch. 325, § 1, p. 544.)" (*Id.*, at p. 578, italics added.) (Fn. omitted.)

"Again, prior to 1970 murder was defined as the unlawful and malicious killing of 'a human being.' (Pen. Code, § 187.) In that year we held—in accord with the settled common law rule at the time of the enactment of the Penal Code—that the prior live birth of the victim was mandatory to a conviction of murder and hence that a fetus was not a 'human being' within the meaning of section 187. (*Keeler* v. *Superior Court* (1970) *supra*, 2 Cal.3d 619, 628-631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) The Legislature thereupon chose to extend the statute to the case of the unborn child, but did so by creating a new category of murder victims; rather than redefine the term 'human being' to *include* a fetus, the Legislature declared that murder is now the unlawful and malicious killing of 'a human being, *or* a fetus' (italics added; Stats. 1970, ch. 1311, § 1, p. 2440). [¶] We conclude from the foregoing that *when the Legislature determines to confer legal personality on unborn fetuses for certain limited purposes, it expresses that intent in specific and appropriate terms; the corollary, of course, is that when the Legislature speaks generally of a 'person,' as in section 377, it impliedly but plainly excludes such fetuses....* But we may fairly infer that if at any time during the ensuing century the Legislature had meant to include fetuses among the class of victims described in section 377, it could easily have so provided by amending the statute in either of the ways in which, as we have seen, it amended Penal Code sections 187 and 270 for the very same purpose. *We decline to promulgate such an amendment ourselves.*" (*Id.*, at p. 579; latter italics added; fn. omitted.)

Subsequent to our Supreme Court's decision in *Justus*, the Fourth District Court of Appeal held that the word "child" as used in Penal Code section 273a, subdivision (1) (wilful cruelty or unjustified punishment of a child) was not intended to refer to an unborn child. (*Reyes* v. *Superior Court* (1977) 75 Cal.App.3d 214, 216 [141 Cal.Rptr. 912].)

We refrain from promulgating an amendment to section 300 to expand the meaning of the term "person" to include an "unborn fetus." The power to make laws is vested in the Legislature (excepting the People's rights to the powers of initiative and referendum) and not in the courts. (Cal. Const., art. IV, § 1.) Accordingly, we strictly construe the

language of this section and find the order of the juvenile court sustaining jurisdiction over the unborn fetus lacking in statutory authority.

*LPS Proceedings Should Have Been Instituted by the District Attorney*

When the dependent child petition at issue in this appeal was filed, the record reflected a disputable issue worthy of resolution by the superior court's mental health department, viz., whether the mother's mental condition warranted her commitment under LPS.

Appellant Kay S. was detained by the juvenile court because she was unable to provide for herself ánd for the unborn child. She was entitled to have her due process rights protected by proceedings under LPS rather than by proceedings in juvenile court which in effect ignored her right to be judged for detention or commitment by the specific statutory provisions which determine the state's right to restrict her liberty due to her asserted mental illness. As stated in section 5001, the legislative intent of the LPS act is: "(a) To end the inappropriate, indefinite, and involuntary commitment of mentally disordered persons, . . . [¶] (d) To safeguard individual rights through judicial review; . . . ."

"In the field of mental health, state Legislatures have had to choose between 'the medical objectives of treating sick people without legal delays and the *equally valid legal aim of insuring that persons are not deprived of their liberties without due process of law*' [citation]. *After intensive research, our Legislature incorporated these diverse objectives into the LPS.* The statute is designed to provide prompt, short-term, community-based intensive treatment, without stigma or loss of liberty, to individuals with mental disorders who are dangerous to themselves or to others, or who are gravely disabled [citation]. Although the LPS is more medically oriented than the former commitment statute, *the California Legislature enacted procedural safeguards to protect an individual against erroneous commitment* [citation]." (*Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 282 [139 Cal.Rptr. 357].) (Italics added; fn. omitted.)

The district attorney could have proceeded under LPS, but, by not proceeding, was in effect conceding that appellant was in fact sufficiently able to care for herself and not a danger to others, within the meaning of LPS. DPSS should not have been permitted to use a dependent child petition in the juvenile court as a basis for confining appellant to protect the unborn fetus. We disapprove of the use of the

juvenile court proceedings in the instant case which effectively detained the mother for approximately two months in circumvention of the state's mental health laws.[6] If LPS act proceedings had been instituted and the mother subsequently committed, the mother's legal rights and the unborn fetus' physical care would both have received the necessary protections under the law.

*The Order Declaring the Appellant's Child a Dependent Child Is Justi-*
*fied on the Basis of Facts Which Occurred Subsequent to the*
*Adjudication Hearing*

An order declaring a minor a dependent child of the juvenile court is, however, necessarily predicated on the circumstances existing at the time of the adjudication hearing, but does not end at this proceeding. Dependency is a continuing status for the welfare of the child and changed circumstances must be considered in any proceeding concerning the child's status, even though such changed circumstances develop subsequent to the order declaring the minor a dependent child and during the pendency of the appeal. (Cf. *In re Katherine R.* (1970) 6 Cal.App.3d 354, 356 [86 Cal.Rptr. 281].)

At the present time, the whereabouts of the appellant Kay S. and the person whom she alleged was the father are both unknown. The child is in a foster care home being supervised by DPSS since there is presumably no extended family able to care for the child. In spite of our disapproval of the order of May 28, 1980, sustaining the dependent child petition, which was based on the finding that an unborn fetus was a person within the meaning of section 300, a reversal of that order would serve no useful purpose since DPSS would be faced with refiling a new petition based on the absence of a parent or guardian to care for the child which would undoubtedly be sustained unless the mother suddenly appears.[7]

---

[6]Other less restrictive and nondetention alternatives were possible and were in the process of being explored by DPSS such as allowing appellant Kay S. to remain at her home with the assistance of a caretaker. The juvenile court file does not reveal any further investigation or reports concerning such possible alternatives after the detention hearing on May 6, 1980. These nondetention alternatives, if pursued, may have eliminated the need to detain appellant Kay S.

[7]The DPSS social worker's report filed in the juvenile court on June 9, 1981, reflects that the mother left County Medical Center after the birth of the child and DPSS has had no contact since then.

For the reasons stated above, the interests of justice are best served by dismissing the appeal as moot.

Potter, Acting P. J., and Cobey, J., concurred.